BURWELL, et al. *v.* PLANTERS LUMBER Co.

Feb. 15, 1954

No. 39103          53 Adv. S. 1          70 So. 2d 71

*Byrd, Wise & Smith, William O. Carter, Barron C. Ricketts,* Jackson, for appellants.

*Vardaman S. Dunn,* Jackson, for appellee.

**LEE, J.**

Planters Lumber Company filed its suit against John L. Burwell and others to enforce its lien for labor performed and materials furnished in the repair and construction of buildings on a certain lot in the City of Jackson. The circuit judge, by agreement, sitting as both judge and jury, found for the plaintiff, and condemned the buildings and improvements for the satisfaction of the lien, but did not extend it to the lot upon which they are situated. The Burwells prosecute a direct appeal, and the Lumber Company, a cross-appeal.

The cause was tried on an agreed statement of facts, in which it was agreed that it was to be determined "upon such facts as are charged in plaintiff's declaration and admitted or not denied by defendants, and upon the facts as set forth herein."

The Burwells were the owners of the lot, which on December 19, 1949, they had leased to Joe B. Hughey for a period of five years. Hughey and wife on December 27, 1949, made a contract with the Lumber Company to repair and remodel an existing building, and to construct another building thereon.

The Lumber Company charged in its amended declaration: "That the said Joe B. Hughey and Mrs. Joe B. Hughey were tenants of said described property under lease from the owners of said land and were duly authorized, both expressly and impliedly, by the owners of said land to make said repairs and alterations and to place said improvements thereon. That the owners of said land were notified by plaintiff prior to making the said repairs and alterations and prior to the erection of said improvements and the said owners duly consented thereto."

The answer of the Burwells thereto was as follows: "Defendants admit that the said Joe B. Hughey was a tenant of the said described property under lease from the owners of the said land and that the said tenant was authorized, both expressly and impliedly, by the owners of the said land to make certain alterations, repairs and improvements thereon."

A paragraph of the stipulation provided: "There was situated on this property owned by said defendants a building, designated on the plat attached to said lease contract as Unit No. 1. It was understood by the parties under the lease that the building on Unit No. 1 would be remodeled and improved for use by lessee in furnishing over-night sleeping accommodations to male truck drivers and others, and thereafter it was decided by lessee, with the knowledge and assent of lessors, that a new building would be erected for use by lessee as a filling station business on the premises."

When the repair of Unit No. 1 was completed, the building was called "Trucker's Hotel"; and on completion of the new building it was called "Trucker's

Cafc.'' The aggregate cost was $5,392.41, which included $2,293.65 for the hotel and $3,098.76 for the cafe. Such cost was fair and reasonable.

Payments under the building contract were to be made as follows: ''1c per gallon of monthly gross sales to be paid each month on or before the 10th of the month for the preceding months sales, minimum payment $100.00 per month.''.

Payments under the lease contract were to be ''1c per gallon on all sales of gasoline and other motor fuels from the leased premises,'' but with a minimum monthly payment of $60.00 for the first year.

Gasoline was delivered to the station each month from March 2 until August 18, 1950, but the Hugheys paid nothing on their building contract.

On February 7, 1951, the Burwells gave notice to Hughey to vacate the premises for nonpayment of rent, and on March 7, 1951, they took possession.

On May 12, 1951, the Lumber Company filed its original declaration, based on open account; and after answer by the defendants, it amended its declaration so as to base its claim on the building contract.

The First Federal Savings & Loan Association, as the holder of two deeds of trust on this property, was made a party defendant. However, its liens are superior. The trial court so held, and there is no concern about this feature of the case.

Section 356, Code of 1942, gives a lien on buildings, repaired or constructed, to secure the payment of the debt contracted and owing for labor done and materials furnished thereon.

Section 357, Code of 1942, is as follows:

''The lien declared in the foregoing section shall exist only in favor of the person employed, or with whom the contract is made to perform such labor or furnish such materials or render such architectural service, and his assigns, and when the contract or employment is made

by the owner, or by his agent, representative, guardian or tenant authorized, either expressly or impliedly, by the owner.''

There was a valid building contract between the Lumber Company and the Hugheys. If that contract was made by the Hugheys as ''tenant authorized, either expressly or impliedly, by the owner,'' the Burwells, then the Lumber Company had the benefit of the lien provided in Section 356, supra.

▅▅▅▅ The pleadings and the agreed statement of facts show that the Burwells, if not expressly, at least impliedly, authorized Hughey to repair the existing building and to construct the new one, and, therefore, to make a contract for that purpose with the Lumber Company. Consequently the Lumber Company acquired a lien on the buildings for such repair and construction; and under Section 356, supra, such lien extends to and covers the entire lot on which the buildings stand and the entire curtilage thereto belonging.

Therefore appellants' contention that the Court was in error in upholding a lien against the prior existing building and in affixing a lien against their property must fall.

The appellants further contend that this suit was not filed ''within twelve months next after the time when the money due and claimed by the suit became due and payable,'' and that under Section 360, Code 1942, the lien was lost and the appellee had no cause of action.

But, as early as 1875, when under Section 1609, Code of 1871, the limitation on the materialman's lien was six months, in Ehlers v. Elder, 51 Miss. 495, it was pointed out that ''if no time be fixed by express contract to pay for material, the law implies a contract to pay presently —on delivery,'' and, in that event, the suit would have to be brought within six months. · But it was further said that ''the parties, under Sec. 1609 of the Code, may agree as to the time of payment, whereby the postponement

would be longer than six months after the delivery of the lumber.''

The right of the parties to establish the due date of the obligation is well settled. Anderson v. Lancaster, 215 Miss. 179, 60 So. 2d 595, and authorities there cited. In such case, they of course do not change the limitation.

In the case here, the amount for the repair and construction was not due on completion. It was to be paid monthly out of 1c per gallon of gasoline or its products, with a minimum of $100. The parties agreed as to the time and method of payment whereby a large part of the debt was not due until more than one year after the completion of the improvements, just as in Ehlers v. Elder, supra, it was held that they could do. Besides, there was no provision in the contract which authorized the appellee to declare the full amount due upon default in payments. Due to the fact that the March, April, and May payments of $100 each were in default for one year or more, the trial court properly reduced the lien for $5,392.41 by $300.

The appellants rely strongly on Inerarity v. A. S. Wade & Co., 141 Miss. 552, 106 So. 828. The distinction however is, that in that case, Inerarity, under the contract was to pay for the lumber in such monthly payments as he was able. But he had to make a payment in some amount. If he failed to do that, it was held that the whole debt became due; and unless suit was brought within a year, the lien was barred. The other cases, cited by appellants, are not out of harmony with the conclusion which has been reached in this cause.

From which it follows that this case will be reversed and a judgment will be entered here on cross-appeal, and the judgment will be modified and affirmed on direct appeal, so as to establish the appellee's lien for $5,092.41 on both buildings and to extend to and cover the entire

lot on which they stand and the entire curtilage thereto belonging.

Reversed and rendered on cross-appeal, modified and affirmed on direct appeal.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.