341 So.2d 907 (1977)
Guile F. BROWN and Margaret F. Brown
v.
GRAVLEE LUMBER CO., INC.
No. 49098.
Supreme Court of Mississippi.
January 26, 1977.
*908 Bramlett, Mounce & Soper, Paul Kent Bramlett, Tupelo, for appellants.
Mitchell, McNutt, Bush, Lagrone & Sams, L.F. Sams, Jr., Tupelo, for appellee.
Before INZER, ROBERTSON and WALKER, JJ.
WALKER, Justice:
In February of 1971, Gravlee Lumber Company entered into a contract with Mrs. Gloria Stanford to perform certain repairs upon a residence in Tupelo occupied by Mrs. Stanford and her husband, but owned by her parents, Mr. and Mrs. Guile F. Brown. Mrs. Stanford proved unable to pay the debt, whereupon Gravlee brought this action in the Chancery Court of Lee County, Mississippi, to recover a monetary judgment against Mrs. Stanford and the Browns and to enforce a construction lien against the property in question. The chancellor found Mrs. Stanford liable to Gravlee in the amount of $1,918.20, but found that the Browns were not personally liable. However, because Mrs. Stanford had been making the mortgage payments on the residence, the chancellor found that the Browns held the property in a resulting trust for *909 her benefit. The court awarded Gravlee an equitable lien on that interest and ordered the sale of the house and lot to satisfy Mrs. Stanford's debt. Mrs. Stanford has not appealed from the judgment, but the Browns have appealed from the imposition of a lien upon their property. Gravlee has filed a cross-appeal, contending that it was error to divide the costs between the parties.
The propriety of the chancellor's decision must be determined by an examination of our construction lien statutes, gathered at sections 356 to 358 of the Mississippi Code 1942 Annotated (1956), and now codified as Mississippi Code Annotated sections 85-7-131, 85-7-135, and 85-7-137 (1972). Section 85-7-131 provides generally that those performing construction and repair services shall have a lien on the property on which the structure in question is located. However, section 85-7-135 limits this language by providing that the lien shall only arise where the work is contracted for by the owner or by a person "authorized, either expressly or impliedly, by the owner." Section 85-7-137 further limits the application of the lien:
If such house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner. (Emphasis added).
It is stipulated that the Browns are the owners of the property in question. Thus, in order for Gravlee to be entitled to any lien against the property, it had to prove that Mrs. Stanford, in contracting for repairs, was authorized by her parents. Furthermore, in order for that lien to extend to the entire lot, Gravlee had to prove that Mrs. Stanford had the written consent of her parents. Otherwise, the lien would be limited to the building, some part thereof, or "the estate of the tenant."
The chancellor found as a matter of fact that the repairs were authorized by the Browns. He found that Mrs. Brown had assisted in selecting material for the job, and that Mr. Brown had been present while some of the work was being conducted. Mr. Brown's testimony clarifies his position:
Q. All right. While your daughter was occupying the house at 136 Wayside Street, did she have your permission to make repairs and alterations on the house if she so desired for her own account and at her own expense?
A. The only thing that she told me about was that she wanted to enclose the porch; that's the only thing she ever told me she wanted to do. I told her if she could do it, if she had the money to do it, go ahead and do it.
Q. My question though is: While Mrs. Stanford was occupying this house, making in effect the monthly payments on the house, did she have your consent to take care of the house, to paint it or do whatever she desired to keep the house in good repair or to make any alterations she wanted to make on the house?
A. Providing she pay for it.
The Browns contend that this evidence does not support a finding that they authorized the work. Evidently conceding that the work was done with their knowledge and consent, they contend that this is not sufficient as a matter of law, and rely primarily upon this language in the opinion on suggestion of error in Stubbs v. Capital Paint & Glass Co., 160 Miss. 832, 846, 135 So. 495, 496 (1931):
[W]here material is furnished by a person other than the owner for the partial construction of a building, there is no lien on the building, although such material may have been furnished with the knowledge and consent of the owner of the lot and building.
The Browns misconstrue the import of this language. In Stubbs, the lower court had impressed a lien on the entire lot, which was clearly error. Knowledge and consent certainly are not enough to support a lien on the lot where the statute explicitly requires written consent. The Court did not say that knowledge and consent did not *910 constitute sufficient authorization to justify the imposition of a less extensive lien.
We believe that a liberal construction of the word "authorized" in section 85-7-135 is necessary to effectuate the probable intent of the Legislature. The statute seeks to protect the workman who might otherwise go uncompensated for his labor. A restrictive definition of authorization would undermine that beneficent purpose. It can hardly be argued that a liberal construction does not sufficiently protect the owners against the actions of their tenants and relatives. The Legislature has already considered that problem and has provided in section 85-7-137 that the workman shall only obtain a limited lien where the authorization is not in writing. This protection for owners having been provided by the Legislature, we see no justification for providing further protection by a restrictive concept of authorization. The knowledge and consent of the owner are sufficient to invoke the protection of section 85-7-135, and the chancellor committed no error in so finding.
However, the chancellor committed manifest error in extending the lien to the entire lot. Since there was no written consent by the Browns, Gravlee was entitled to only a limited lien, according to the provisions of section 85-7-137. Gravlee urges that Burwell v. Planters Lumber Co., 220 Miss. 79, 70 So.2d 71 (1954), allows the imposition of a lien on the entire lot despite the lack of written consent. We cannot agree with this contention. There was a written lease in Burwell, and it was stipulated that it was understood by the owner and tenant under the lease that the tenant would make certain repairs and construct new buildings. Id. at 82, 70 So.2d at 72-73. Given the unequivocal language of section 358, we must presume that the Court found that this agreement was contained in the written lease, thereby entitling the workmen to a lien on the entire lot.
Gravlee contends that, in any event, it is entitled to a lien on Mrs. Stanford's equitable interest in the property. This argument seems plausible, since section 85-7-137 authorizes a lien on "the estate of the tenant or such other person," even where there is no written consent. Furthermore, the law of other jurisdictions allows the imposition of mechanics' liens on such equitable interests. 53 Am.Jur.2d Mechanics' Liens § 41 (1970); 57 C.J.S. Mechanics' Liens § 16 (1948). We need not decide whether the Mississippi statutes should extend so far, since we are unable to see that Mrs. Stanford has any interest, equitable or legal, in the property.
The facts surrounding Mrs. Stanford's interest in the property are best described by her father's testimony:
Q. The payment that she was making then, directed to you, which you in turn passed on to the bank was the exact amount of the loan payment being made to First Citizens, is that correct?
A. Right.
Q. And that was in effect some sort of rent payment then by your daughter; is that correct?
A. Right.
Q. And as I understand it, it was your agreement that when the final payment had been made by your daughter, so that you could make that payment to First Citizens and pay off that bank, then you would give the property to your daughter; is that correct?
A. That's right.
Only three types of interest might conceivably arise from this arrangement. It is possible, as the chancellor found, that Mrs. Stanford might be considered the beneficiary of a resulting trust, whereby her parents held legal title, although she paid for the property. Mrs. Stanford might also be considered to have an equitable interest as the vendee of an enforceable contract of sale. Finally, she might have a legal estate as the tenant under a month-to-month lease. We have concluded that there was no resulting trust nor enforceable contract of sale for the reasons hereinafter discussed.
Gravlee has not chosen to advance the theory that Mrs. Stanford held a leasehold interest. This is understandable, since such *911 a periodic tenancy would have very little value. However, the other two possibilities require more extensive discussion.
A resulting trust may arise where one party pays the consideration for the purchase of property, and another party takes legal title thereto. For a trust to arise, it is essential that the parties intend that the holder of the legal title shall hold only for the benefit of the purchaser. 89 C.J.S. Trusts § 116 (1955). In the absence of countervailing evidence, the courts will impose this trust, assuming that the party who paid for the property was intended to have the benefit of it. However, the facts giving rise to the presumption, such as the fact and circumstances of payment, must be proved clearly and cogently, since the court ought not to disregard lightly the recorded evidence of legal title. Coney v. Coney, 249 Miss. 561, 568-69, 163 So.2d 692, 695 (1964).
The case of Brabham v. Brabham, 226 Miss. 165, 172-73, 84 So.2d 147, 151 (1955), quoting from earlier Mississippi cases and other authority, lays down in some detail the law of resulting trusts in Mississippi:
"... The foundation of the trust in such cases is that the property really belongs to him whose funds have paid for it. But the facts creating the trust must exist at the time of the conveyance; for it is the money which has gone to the vendor as an inducement to the conveyance that creates the equity called a resulting trust. After the title has been conveyed the application of the funds of another to pay the purchase money for the land creates no trust in favor of such other. The trust arises, if at all, at the time of the conveyance. McCarroll v. Alexander, 48 Miss. 128; Miazza v. Yerger, 53 Miss. 135; Brooks v. Shelton, 54 Miss. 353; Thomas v. Thomas, 62 Miss. 531; Chiles v. Gallagher, 67 Miss. 413, 7 So. 208; Barton v. Magruder, 69 Miss. 462, 13 So. 839; Logan v. Johnson, 72 Miss. 185, 16 So. 231; Moore v. Moore, 74 Miss. 59, 19 So. 953; Shrader v. Shrader, 119 Miss. 526, 81 So. 227. Pomeroy lays down the controlling principle thus:
`In order that this effect may be produced, however, it is absolutely indispensable that the payments should be actually made by the beneficiary or that an absolute obligation to pay should be incurred by him as a part of the original transaction of purchase at or before the time of conveyance. No subsequent and entirely independent conduct, intervention, or a payment on his part would raise any resulting trust.' 3 Pomeroy's Equity Jurisprudence (3d Ed.), § 1037." Bush v. Bush, 134 Miss. 523, 99 So. 151, 152.
We believe that the chancellor erred in finding a resulting trust on the facts presented here. The law is clear: "The trust arises, if at all, at the time of the conveyance." Id. at 172-73, 84 So.2d at 151. This record does not show when the property was conveyed to Mr. and Mrs. Brown. For a resulting trust to have arisen in favor of Mrs. Stanford, the record must show that, at the time of the conveyance, she had paid the purchase price or had incurred "an absolute obligation to pay." Id. at 173, 84 So.2d at 151. This record shows only that she made payments to her parents equal to the mortgage payments after she moved into the house. No trust can arise from payments made after the time of the conveyance. In these circumstances, we cannot hold that the Browns are mere trustees for their daughter. Consequently, we cannot conclude that Mrs. Stanford has a beneficial interest to which a construction lien may attach.
Finally, there exists the possibility that Mrs. Stanford should be considered as the vendee under a contract of sale. In other states, a vendee's interest under an executory contract of sale is subject to a construction lien. 53 Am.Jur.2d Mechanics' Liens § 42; 57 C.J.S. Mechanics' Liens § 71c. It is generally held that an oral contract of sale is sufficient, if circumstances are present which make the contract enforceable despite the statute of frauds. 57 C.J.S. Mechanics' Liens § 71c. In this case, it was admitted both in testimony and in the answer to interrogatories that such an oral contract existed. It must be determined *912 whether this agreement would be enforceable against the Browns despite the statute of frauds. Miss. Code Ann. § 15-31(c) (1972).
In his opinion, the chancellor held that the signed admissions by the Browns of the existence of the contract were sufficient to remove it from the statute of frauds. We find no prior Mississippi cases as to whether a judicial pleading or document is sufficient to satisfy our statute's requirement of a signed memorandum. The rule in other states seems to be that such a writing is ordinarily sufficient. 72 Am.Jur.2d Statute of Frauds § 307 (1974). See generally Annot., 22 A.L.R. 735 (1923). However, the text goes on to say:
The above general rule is clearly applicable where the party admits the oral contract in his pleading and does not assert the statute; in such case this constitutes a sufficient memorandum to satisfy the statute of frauds. This is in accord with the principle that if the defendant by his answer admits the contract and does not set up the statute of frauds as a defense, he cannot have the benefit of the statute but is considered as having waived its protection. It is generally held, however, that in the absence of a statute providing otherwise, the fact that the defendant in his plea or answer admits the oral contract does not prevent him, at the same time, and notwithstanding the admission, from setting up and insisting upon the statute of frauds, and in most jurisdictions the pleading cannot be regarded as a sufficient writing within the statute if the pleader at the same time sets up and relies upon the statute as a defense. (72 Am.Jur.2d Statute of Frauds § 307 at 827-28 (1974)).
Thus, the rule in most jurisdictions is that a party may plead the statute as a defense to the action despite his admission of the contract's existence. See generally Annot., 158 A.L.R. 89, 156-62 (1945); Annot., 22 A.L.R. 723 (1923).
In this state, a party must raise the statute of frauds as an affirmative defense in order to take advantage of its protection. Greer v. Crawford Corp., 220 Miss. 97, 104, 70 So.2d 69, 70 (1954). The Browns did assert the defense of the statute, both in their pleadings and at trial. We see no reason to depart from the generally prevailing rule that a party might rely on this defense despite his admission of the existence of the contract. Any other rule would require a party to lie in his pleadings in order to retain the protection afforded him by the statute. Hence, we hold that the chancellor erred in finding that the Browns' pleadings deprived them of the protection of the statute. Nor do we find any other circumstances in this case which render the contract enforceable despite the statute. It is the rule in Mississippi "that neither part performance of an oral contract with respect to the sale of land nor the expenditure of money in reliance upon it are sufficient to take it out of the Statute of Frauds." Reid v. Horne, 187 So.2d 316, 318 (Miss. 1966). Since Mrs. Stanford could not have enforced this contract against the Browns, it follows that she had no equitable interest as a vendee to which a construction lien could attach. Hence, we conclude that Mrs. Stanford had no "estate ... in the land" that could be subject to a construction lien under the provisions of section 85-7-137.
Under that section, Gravlee is entitled at most to a lien on the improvements actually made. This statute was clearly and correctly construed in Chears Floor & Screen Co. v. Gidden, 159 Miss. 288, 297-98, 131 So. 426, 428 (1930):
If the house  the entire house  be constructed by the tenant, guardian, or other person not the owner of the land, then the entire building is subject to the lien, but not the lot in addition, unless the building is constructed with the written consent of the owner. And if a structure, for illustration, an added room, as in the Tompkins case [Planters' Lumber Co. v. Tompkins, 111 Miss. 307, 71 So. 565 (1916)], be erected by a tenant, guardian, or other person not the owner of the land, such structure alone is liable to the lien, *913 provided it can be detached from and removed from the original building without injury to the latter... . On the other hand, if anything less than the whole building be constructed at the instance of the tenant, guardian, or other person not the owner of the land, and the separation and removal of such structure, whether it be an addition to the building, fixtures, or repairs, cannot be accomplished without injury to the original structure, the lien does not attach to either the complete building or such additions thereto... ... .
This language clearly demonstrates that Gravlee is entitled to a lien on only those improvements which can be separated without damaging the Browns' interest in the house. Gravlee argues that Chears misconstrued the statute and failed to provide adequate protection for workmen. We are not impressed by this argument. Had Gravlee wished to protect itself, it could have researched the recorded title to the lot before agreeing to perform the work. Since we cannot tell from this record whether Gravlee might be able to remove some of its improvements without damage to the Browns' interest, the case must be remanded to the chancery court for proceedings not inconsistent with this opinion.
On cross-appeal, Gravlee argues that it was error for the chancellor to divide the costs between the contending parties. Our law is clear that the division of costs is ordinarily a matter within the discretion of the chancellor. Miss. Code Ann. § 11-53-35 (1972). There are no circumstances in this case which persuade us that the chancellor abused his discretion.
The case is therefore reversed and remanded on direct appeal and affirmed on cross-appeal.
REVERSED AND REMANDED ON DIRECT APPEAL AND AFFIRMED ON CROSS-APPEAL.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.