417 So.2d 536 (1982)
George T. GRAHAM, Sr., Geraldine Howell, Admrx. for Estate of E.N. Howell & Robert J. Hensley d/b/a Hensley Electric Co.
v.
Jerry R. PUGH, Ind. & Gene Calvary, Jess Derrick & Weldon Brooks, Ind. and d/b/a Kawasaki of Corinth, a Partnership.
No. 53468.
Supreme Court of Mississippi.
May 26, 1982.
As Modified on Denial of Rehearing August 11, 1982.
*537 J.B. Garretty, Corinth, for appellants.
Price, Krohn & McLemore, Robert G. Krohn, Corinth, for appellees.
Before WALKER, DAN M. LEE and DARDEN, JJ.
DARDEN, Justice, for the Court:
This case comes from the Circuit Court of Alcorn County and involves an effort by workmen and a material supplier to impress a lien on real estate for work done toward renovating a building under Mississippi Code Annotated section 85-7-131 (Supp. 1981). There was also a claim of personal liability of the owners and tenant for the work and materials. We reverse for further consideration of the claim of lien and the personal liability of the tenant. We affirm the holding that the owners are not personally liable to appellants.
Calvary, Derrick and Brooks, were the owners of the property involved here. Calvary testified and there was a stipulation that the other two owners would testify to the same facts that he did if they had been called to the stand. Calvary's testimony was that a man named Van Thomas came to him and stated that he was looking for a building because he had some people who wanted to put in a fast food operation under a franchise called Friar-Tuck. Calvary indicated that he and his co-owners were interested in leasing the building involved here and Van Thomas, as Calvary said, "set up the whole thing." For his services Van Thomas was to receive $50.00 per month from the owners of the building from the rental that they were to receive for the use of their building by the fast food chain.
Van Thomas got in touch with the defendant, Jerry R. Pugh, and Pugh undertook to purchase the franchise for the fast food operation from Mid-South Fast Foods Inc., a company that was domiciled in Tennessee. Van Thomas then had a lease contract drawn up which was executed by the three defendants, owners of the property, as lessors, and the defendant, Jerry Pugh, as lessee. The lease contract contained the following provisions:
4. It is a condition of this Lease agreement that Lessee shall make substantial improvements to buildings and parking areas situated on the demised premises, suitable and acceptable to Lessors, on or before the 15th day of October, 1978. It is a further condition of this Lease that these improvements shall be in the minimum amount of $10,000.00 as measured by the ordinary, reasonable and customary cost for such improvements in *538 Corinth, Alcorn County, Mississippi in August of 1978.
... .
13. At all times during the term of this Lease, Lessors shall have the right, by themselves, their agents and employees, to enter into and upon said premises during reasonable business hours for the purpose of examining and inspecting the same and determining whether the Lessee shall have complied with his obligations hereunder in respect to the maintenance of the premises and the repair or rebuilding of the improvements thereon.
Robert F. McKinney was the president of Mid-South Fast Foods, Inc. When the lease was entered into between the owners and Pugh, Van Thomas carried the lease to Memphis to McKinney. The owners were aware of the fact that Pugh was dealing with Mid-South Fast Foods. The lease was dated July 13, 1978, and prior to that time, on July 6, 1978, Pugh had entered into a contract with Mid-South Fast Foods which contained the following provisions:
Mid South Fast Foods, Inc. hereby agrees to the following:
1.) Contract and pay for all remodeling, (if necessary) of a location to be selected for a Friar Tuck Restaurant in Corinth, Mississippi.
2.) Contract and pay for all electrical, heating, cooling, etc. at such location.
3.) Contract and pay for site preparation, grading and paving at such location.
4.) Set up accounts and pay for all materials used in the above mentioned.
In return for the aforementioned, Jerry R. Pugh agrees to the following:
1.) Repay to Mid South Fast Foods, Inc. the entire sum encoured [sic] by Mid South Fast Foods, Inc.
The method of payment was then set out in that contract.
On the strength of the agreement with Mid-South Fast Foods and the lease contract that he had entered into with the owners of the property, Pugh went to Selma, Tennessee and got in touch with George Graham, Sr., a builder and one of the plaintiffs in this case. Pugh asked him if he wanted to do some work for a Tennessee concern that was interested in setting up a fast food operation in Corinth. Graham got in touch with McKinney and agreed to do the work on the building according to McKinney's instructions, directions and plans. Graham began work on August 28 and performed labor on the property involved through the 15th of September, 1978. The total amount of the bill that he rendered was $4,670.66, which consisted entirely of labor except for one bathroom window which amounted to $15.00, which he had purchased from some other concern. His bills were all made out to Mid-South Fast Foods in Memphis, Tennessee, some of them being addressed to Bob McKinney. These bills were not paid.
The E.N. Howell Lumber Company of Corinth furnished material for the job beginning on August 31, 1978, with the last delivery made on September 19, 1978. All of the bills for lumber were to Mid-South Fast Food Supply and most of them were signed by George Graham as having received the materials charged. The arrangement for the building material was made with the lumber company by Graham and McKinney, who came over to the lumber yard one day and told Howell that they would like to set up an account to furnish material on the renovation of the building which was going to be a chicken place. Howell has since died and the suit in behalf of the lumber company was brought by the administratrix of his estate.
In regard to the payment for the material furnished, Howell's daughter, who was the bookkeeper and who was familiar with the business, testified that her father had spoken to Graham in reference to the payment of the bills at one time and was told that they were all supposed to be paid at the end of the job. There is no indication that the Howell Lumber Company had any dealings with Calvary, Derrick or Brooks about the material or the job. The total amount of the materials bill is $2,858.08. It has not been paid.
*539 Plaintiff Robert J. Hensley is an electrician in Corinth and he was employed by McKinney to do the electrical wiring work in the building and was directed as to what to do by an electrician out of Memphis who was a representative of McKinney. Hensley agreed to do the work for a total sum of $5,800.00 complete. He started work on September 18, 1978 and worked through October 26, 1978. During that time he did work and furnished materials that came to a total of $1,875.35. The bills have not been paid.
When Mid-South Fast Foods failed to pay the bills submitted by Graham and Hensley, they stopped work on the renovation job.
In December, 1978, Calvary cancelled Pugh's lease because the renovation work had not been completed within the time fixed in the lease.
Calvary testified that during the course of the work, he was down at the job seeing what was going on "pretty regularly". In reference to McKinney, Calvary said that McKinney was serving as the general contractor and when asked how he knew that replied:
Well, I met with him on several occasions down there and he was the one, I knew that Jerry [Pugh] had a contract with him for him to take care of all the necessary arrangements, to get the building in order for Jerry to take over and start the operation of the building. As far as knowing if there was a written contract, no, sir, I didn't, but I do know that he was making all of the arrangements and seeing all the people.
Calvary was further questioned in reference to the matter and replied as follows:
Q. Were you ever told or presented with any plans or specifications as to this ten thousand dollars worth of improvements that were to go in the building?
A. Yes, sir, I met with Mr. Bob McKinney on several occasions and he was the one that told me what all they were going to do to the building and how they were going to go about it.
Q. Did he ever furnish you with any drawings or written specifications?
A. No, sir.
Q. He just told you orally?
A. Yes, sir.
Q. And you approved of what he was going to do?
A. Yes, sir, I was by the building every day, I was seeing what they were doing.
Q. Well, yes, sir, I understand that, but when he told you about it you said that that is fine, to go ahead, you didn't raise any objections to what he was going to do?
A. No, whatever he wanted to do to the building, I told him other than,  I told him very simply that I didn't want him to tear the building down, if they were going to make any major changes in the building we would like to know about it.
At the conclusion of the case for the plaintiffs defendants made a motion for a directed verdict and it was sustained by the court on the basis that there was no contract between the owners and the plaintiffs.
The plaintiffs appeal in this case, urging that there was an agency relationship between McKinney, Pugh and the owners of the property and that Pugh and the property owners are directly liable to them for the amount of the indebtedness owing for work and material furnished or performed on the building. We think that the circuit judge was correct in his holding that there was no personal liability on the part of the property owners to the materialmen and workmen.
Addressing the question of Pugh's obligation, the evidence before the Court when plaintiff rested indicated that Pugh was obligated by the provisions of the lease to do ten thousand dollars worth of renovation or remodeling work on the building. In the discharge of that obligation, he made an agreement with Mid-South Fast Foods that they would let the contracts for the necessary work and materials. Although Mid-South was to pay for the several items of work, Pugh was to repay them.
*540 Under this state of facts it would appear that Mid-South Fast Foods (acting through McKinney), was the agent of Pugh. Mid-South did not undertake to do the work itself and apparently was not to make any profit from the renovation and remodeling job. We do not consider that it was a contractor, or master workman as those terms are used in Mississippi Code Annotated section 85-7-181 (1972). Its obligation was to contract for and pay for the several items of remodeling and renovation for Pugh.
Pugh's plea of the statute of frauds, Mississippi Code Annotated section 15-3-1(a) (1972) is based upon his theory that he is being called on to pay the debt of others. The facts presented by plaintiffs were sufficient to raise an issue for the jury as to Pugh's personal liability for the debts, contracted by his agent, as distinguished from his answering for the debt or default of another. The action of the Court in directing a verdict for Pugh at this stage was error. Of course, any obligation of Mid-South to Pugh is not here involved.
As to the claim of lien, Mississippi Code Annotated section 85-7-135 (1972) reads as follows:
The lien declared in section 85-7-131 shall exist only in favor of the person employed, or with whom the contract is made to perform such labor or furnish such materials or render such architectural service, and his assigns, and when the contract or employment is made by the owner, or by his agent, representative, guardian or tenant authorized, either expressly or impliedly, by the owner. (Emphasis added).
The record is clear that the owners did not themselves enter into any contract for the performance of any of the services on the building nor for the furnishing of any of the materials. That brings us down to the question of whether they either expressly or impliedly authorized someone else to do so within the meaning and extent of section 85-7-135.
We believe that the case of Burwell v. Planters Lumber Co., 220 Miss. 79, 70 So.2d 71 (1954) is controlling in this matter. Not only did the owners authorize the tenant to arrange for the work to be done on the building but the lease specifically and in terms required that such work be done. Pugh, in turn, authorized Mid-South Fast Foods to act in this regard, and the owners were fully aware of that fact.
Furthermore, under section 13 of the lease, which is quoted above, the lessors had the right to go upon the premises and determine whether or not lessee's obligations in respect to the repair or rebuilding of the property were being performed. Calvary went by the building every day to see what was going on and he discussed with McKinney the nature of the work and insisted that if any major changes in the building were to be done that he should be informed about it. Mississippi Code Annotated section 85-7-137 (1972), reads as follows:
If such house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture, and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner. (Emphasis added).
The defendant Pugh no longer has a leasehold interest in the property against which any lien can be asserted. However, the limitation imposed by that section as to the property of the owners has no application here, because the lease itself specifically and in writing provided that the lessee was to see that the work was done on that particular building.
The facts presented by plaintiffs made a prima facie case of lien under Mississippi Code Annotated section 85-7-131 (Supp. 1981), requiring defendant owners to go forward with proof, if any they have, to overcome that showing.
The defendant property owners properly pleaded the one year statute of limitations contained in Mississippi Code Annotated section 85-7-141 (1972). The plaintiffs responded by denying that the statute had run. A plea of the statute of limitations is an affirmative defense and *541 carrying the burden of proof lies on the party who relies upon that defense. See for example Philley v. Toler, 239 Miss. 347, 123 So.2d 223 (1960). The limitation question was not presented to the trial court and no reference was made to the question of the statute of limitations or its application in the opinion of the court. It is therefore necessary that this matter be considered on the retrial of this case.
We accordingly affirm the lower court in its holding that there is no personal liability on the part of the defendants, Calvary, Derrick and Brooks, or their partnership. The case is reversed for determination of the amount of charges, whether Pugh is liable for debts contracted by Mid-South Fast Foods, his authorized agent, and whether the claim of lien under section 85-7-131 is barred by the provision for limitation contained in section 85-7-141.
The case is, therefore, affirmed in part, reversed in part and remanded for further consideration of these issues.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.