# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00155-SCT

*NATCHEZ ELECTRIC AND SUPPLY CO., INC.*

*v.*

*WAYNE JOHNSON d/b/a JOHNSON ELECTRIC*

## ON MOTION FOR REHEARING
## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2003 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLIFFORD C. WHITNEY, III |
| ATTORNEY FOR APPELLEE: | SCOTT J. SCHWARTZ |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 01/18/2007 |
| MOTION FOR REHEARING FILED: | 02/01/2007 |
| DISPOSITION UPON REHEARING: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART.   THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REVERSED AND  THIS CASE IS REMANDED TO THE FORREST COUNTY CIRCUIT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION - 09/06/2007 |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. Prior opinions are withdrawn and these opinions are substituted therefor.

¶2. In this open-account case where the jury returned a verdict for the defendant, we are asked whether the trial court erred in denying the plaintiff's motions for judgment notwithstanding the verdict (JNOV) and for new trial. Because the jury's verdict in favor of Wayne Johnson was without evidentiary basis, we affirm the Court of Appeals' decision reversing the judgment entered by the Circuit Court of Forrest County. However, rather than affirming the damages rendered by the Court of Appeals, we reverse and remand the case to the circuit court for a new trial on damages only.

## FACTS

¶3. Wayne Johnson operated an electrical contracting business in Hattiesburg as Johnson Electric. Natchez Electric sold electrical materials to Johnson under an open-account agreement. According to Stacy Taggert, manager of the Hattiesburg branch of Natchez Electric, Johnson "was probably . . . the largest commercial contractor [Natchez Electric] was dealing with" out of its Hattiesburg branch, and over the years he purchased "[h]undreds of thousands" of items from the company. Johnson and Taggert were "good business associates, [and] good friends." Taggert estimated that Johnson had purchased "a little over $200,000" in materials from Natchez Electric.

¶4. The relationship soured when Johnson got behind on his payments to Natchez Electric, which ultimately sued him for more than $40,000 in debt. The suit was instituted under the open account statute, Mississippi Code Annotated section 11-53-81 (Rev. 2002). At trial, the jury found in favor of Johnson, but the Court of Appeals reversed and rendered,

2

ordering that a judgment in the amount of $39,098.83 be entered in favor of Natchez Electric.

## DISCUSSION

¶5.    Under Mississippi law, a plaintiff suing on an open account must attach to the complaint a copy of the account.  *See* M.R.C.P. 10(d).  Natchez Electric complied with this rule. Johnson raised several affirmative defenses:  mistakes in Natchez Electric's accounting system,  non-delivery of the goods, lack of signatures on delivery tickets, and theft.  Since a portion of statutory law governing the burden of proof on actions on open accounts has been repealed, the first issue before the court is what proof establishes a prima facie case for an action on an open account.  The second issue is whether Natchez Electric made its prima facie case and met its burden of going forward.

### I.    PRIMA FACIE PROOF FOR OPEN-ACCOUNT CASES

¶6.    The United States Court of Appeals for the Fifth Circuit has defined "prima facie" as: "[evidence] such as will suffice until contradicted and overcome by other evidence . . . [a] case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (quoting Black's Law Dictionary 1353 (4th ed. 1968)) (cited with approval in *Hewes v. Langston*, 853 So. 2d 1237, 1270 (Miss. 2003)).  A prima facie case is made by the proponent solely on his proof.  When this burden of proof has been met, the burden of going forward shifts to the contestants to overcome the prima facie case. *Smith v. Averill*, 722 So. 2d 606, 611(Miss. 1998).  More specifically, once a prima facie case is made on an open account, the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect.  *B.E.I., Inc. v. Newcomer Lumber & Supply Co.,* 745

N.E.2d 233, 237 (Ind. Ct. App. 2001) (citing *Auffenberg v. Board of Trustees of Columbus*

*Regional Hosp.*, 646 N.E.2d 328, 331 (Ind. Ct. App. 1995)).

¶7.     The Iowa Supreme Court has explained what is required to make a prima facie case

in an open-account case:

> It is our conclusion that plaintiff's actual ledger cards showing each entry of debit and credit, the testimony of plaintiff's manager showing the simultaneous business machine posting and invoice billing of the customer, his testimony concerning the correctness of the entries, and his testimony that all materials represented by the entries had been delivered to defendant constitute sufficient evidence to make a prima facie case.

*Prestype, Inc. v. Carr*, 248 N.W.2d 111, 119 (Iowa 1976) (quoting *Gardner and Beedon Co.*

*of Springfield v. Cooke*, 513 P.2d 758 (Ore. 1973)).

¶8.     Stacy Taggert, branch manager for Natchez Electric, testified as to how Natchez

Electric operated its daily business. He provided specific detail concerning the three methods

of delivery and billing to the Johnson Electric account that occurred over the period from

April 1994 to May 1996, when Natchez Electric did business with Johnson. The most

common method involved employees from Johnson Electric entering the Natchez Electric

store with either a written or verbal list of supplies for purchase. Natchez Electric employees

would pull the material, take the name of the job from Johnson Electric, print a delivery

ticket, and forward an invoice to Johnson Electric at regular intervals for payment. The

Johnson Electric employees would either sign the delivery ticket upon receipt of the goods

or leave the store once the materials were loaded without signing the delivery ticket. In case

of the latter, Natchez Electric might hand-write on the delivery ticket the name of the

4

Johnson Electric employee who picked up the goods. Taggert testified Natchez Electric was instructed not to detain Johnson Electric employees waiting on the delivery ticket to print.

¶9. The other two methods of delivery occurred when Natchez Electric delivered electrical goods to a Johnson Electric job site, or a manufacturer, at the request of Natchez Electric, delivered goods directly to a job site. In both cases, the delivery ticket would be unsigned. A freight charge would appear on Natchez Electric invoices for material forwarded from a manufacturer to a Johnson Electric job site. The trial testimony and exhibits contain evidence of all three types of delivery. Taggert testified that the outstanding balance on the invoices entered as an exhibit, less the $19,000 adjustment for overbilling and returned merchandise found on those invoices, is an accurate calculation of the amount Johnson Electric owed to Natchez Electric: $41,794.45.

¶10. We find that Taggert's testimony constituted a prima facie case for the open-account debt. The testimony described Natchez Electric's standard practice of conducting business with Johnson and supported the accuracy of the invoices.

¶11. The burden of proof then shifted to Johnson, who asserted that the invoices were inaccurate, that he did not receive some of the merchandise listed on the invoices, and that a Natchez Electric employee was stealing merchandise and charging it to his account. The burden of proving an affirmative defense lies upon the party who relies upon that defense. *Jenkins v. Pensacola Health Trust, Inc.*, 933 So. 2d 923, 927 (Miss. 2006) (citing *Graham v. Pugh*, 417 So. 2d 536, 541 (Miss. 1982)). We now turn to address the issue of whether Natchez Electric is entitled to a JNOV or a new trial.

5

## II. WHETHER NATCHEZ ELECTRIC IS ENTITLED TO A JUDGMENT NOTWITHSTANDING THE VERDICT OR A NEW TRIAL

¶12. When reviewing the denial of a motion for JNOV, we consider the evidence in the light most favorable to the non-moving party, and give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. ***Steele v. Inn of Vicksburg***, 697 So. 2d 373, 376 (Miss. 1997). *See also* ***Blake v. Clein***, 903 So. 2d 710, 731 (Miss. 2005). If the facts, considered in that light, point so overwhelmingly in favor of the party requesting the JNOV that reasonable persons could not have arrived at a contrary verdict, we will reverse and render. ***Steele***, 697 So. 2d at 376. If there is substantial evidence in support of the verdict we will affirm the denial of the JNOV. ***Id.*** "Substantial evidence" is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. ***Blake***, 903 So. 2d at 731. *See also* ***White v. Yellow Freight System, Inc.***, 905 So. 2d 506, 510 (Miss. 2004) (comparing standards of review applied to motions for JNOV against motions for a new trial).

¶13. Johnson's defense at trial only vaguely challenged the fact that Johnson Electric owed Natchez Electric money. He argued that he did not know whether he received goods where the accompanying delivery ticket was not signed by himself or his employees. He could only state, "I feel like I didn't get the material." However, within the record we find Johnson admitting to the legitimacy of more than $1,600 in charges against Johnson Electric, based on signed delivery tickets. He admitted that a signed ticket would not exist for parts he ordered through Natchez Electric but were received directly from the manufacturer. In one such instance, he received a "gear" directly from the manufacturer and paid for it. He also

admitted he wrote by hand a document noting discrepancies in Natchez Electric invoices during a meeting with Taggart. This meeting resulted in a $19,000 refund which was applied to Johnson's account. While he denied on the stand that he accepted parts from Natchez Electric himself without signing a ticket, this testimony was inconsistent with his deposition testimony wherein he admitted that he took parts from Natchez Electric without signing the delivery ticket. Finally, after reviewing the record, we find specific testimony about only two Natchez Electric invoices that were proven to contain errors; both of which were rectified by the discrepancy refund. This testimony stands in opposition to the testimony that <u>all</u> the invoices admitted into evidence were accurate, representing an amount owed by Johnson to Natchez Electric, subsequently adjusted by the discrepancy refund.

¶14.   Parties can establish a contract for the sale of goods by conduct. Miss. Code Ann. § 75-2-204(1) (Rev. 2002). *See also **Alabama Great Southern R.R. Co. v. McVay***, 381 So. 2d 607 (Miss. 1980). "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, *any* course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." Miss. Code Ann. § 75-2-208(1) (Rev. 2002) (emphasis added). Acceptance occurs when the buyer, after reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming. Miss. Code Ann. §75-2-606 (Rev. 2002).

¶15.   Here, this court is presented with conduct by Natchez Electric and Johnson where each manifested an intent to be bound to the sale and purchase of electrical goods. On the record before the court, acceptance of the terms of this contract was manifested by Johnson's

7

and his employees' receipt of the electrical parts upon delivery at the Natchez Electric store, or delivery to Johnson Electric directly from a manufacturer or from Natchez Electric. Once the electrical goods were taken by Johnson and his employees, Johnson Electric became bound to the contract. When Johnson began paying on the account for items purchased on delivery tickets that were not signed by himself or his employees, he ratified this course of conduct in the performance of the contract. *Cf.* ***Gooch v. Farmers Marketing Ass'n.***, 519 So. 2d 1214, 1216-17 (Miss. 1988) (where this court found course of dealing by telephone sufficient to bind soybean grower to unwritten contract).

¶16. We can find nothing in the record to indicate that Johnson objected to this course of performance until trial. The record contains evidence that this course of performance was, in fact, acceptable to Johnson. His own testimony included inconsistent statements that he accepted goods without signing a delivery ticket from Natchez Electric. He also accepted the $19,000 refund from Natchez Electric without objecting to those purchases made on unsigned delivery tickets. He paid Natchez Electric several times on the account without objecting to the lack of a signature on the delivery tickets. He also paid for the gear delivered directly from the manufacturer. Natchez Electric employee Taggert testified that Johnson instructed them not to slow down his men waiting on the delivery tickets, indicating that simple delivery of the goods to his employees was sufficient to bind Johnson Electric to the contract for the purchase of the electrical goods.

¶17. At trial and on appeal, Johnson argues that he should not have to pay unless the delivery ticket contained the signature of one of his employees. We find this defense without merit under the Mississippi Uniform Commercial Code and the course of the performance

of the contract between Natchez Electric and Johnson Electric. Miss. Code Ann. § 75-2-204(1) (Rev. 2002). We also find Johnson's own testimony sufficient to render judgment in favor of Natchez Electric. After Johnson admitted he owed Natchez Electric at least $1,600 on legitimate, signed, delivery tickets, no reasonable and fairminded juror in the exercise of fair and impartial judgment could have found that Johnson did not owe Natchez Electric any money on the open account. Therefore, this argument is insufficient to withstand the motion for JNOV.

¶18. By so holding, we do not comment upon the accuracy of the quantity or price contained within the Natchez Electric delivery tickets or invoices. We only note the record contains overwhelming evidence of the existence of an obligation for Johnson Electric to pay Natchez Electric for goods delivered on signed and unsigned delivery tickets. These facts warrant reversal of the trial court's judgment, and entry of judgment as a matter of law in favor of Natchez Electric. The amount of damages we leave for the jury.

¶19. Since the jury returned a verdict in favor of Johnson on Natchez Electric's liability claims, it did not have an opportunity to determine the damages for Natchez Electric. In the record, we find sufficient evidence that reasonable jurors could disagree as to the amount owed. The jury's verdict in favor of Johnson on his counterclaims for breach of contract demonstrates this. The evidence of the $19,000 revision and credit also indicate it is possible such mistakes persisted and exist in this record. This matter is therefore remanded to the circuit court for a new trial on the amount of damages alone. *See, e.g., **McKenzie v. Coon***, 656 So. 2d 134 (Miss. 1995).

## CONCLUSION

¶20. The defense verdict in favor of Wayne Johnson on Natchez Electric's suit on his open account is not supported by substantial evidence. The trial court erred when it did not enter judgment as a matter of law in favor of Natchez Electric, which has proven by substantial evidence it is owed money by Johnson for goods delivered to him or his employees.

¶21. We therefore affirm the judgment of the Court of Appeals in part and reverse it in part. We affirm its holding that the circuit court's judgment denying Natchez Electric's motion for judgment notwithstanding the verdict should be reversed and judgment as a matter of law rendered in favor of Natchez Electric. We reverse the judgment of the Court of Appeals which awards damages to Natchez Electric, reverse the trial court's judgment, and remand this matter for a new trial on damages. In all other respects, the judgment of the Court of Appeals is affirmed.

¶22. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REVERSED AND THIS CASE IS REMANDED TO THE FORREST COUNTY CIRCUIT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.**

**SMITH, C.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES AND RANDOLPH, JJ. LAMAR, J., NOT PARTICIPATING.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶23. Because the majority disregards our standard of review and casually dismisses a verdict rendered by a jury, I must respectfully dissent.

¶24. The majority distorts the ample evidentiary record by stating that "Johnson's defense at trial only vaguely challenged the fact that Johnson Electric owed Natchez Electric money." In fact, that was the brunt of the defense, which focused heavily on the inaccuracy of Natchez

10

Electric's billing system and allegations of impropriety on behalf of the company's employees. While the majority scrutinizes the efforts made by Natchez Electric to mount its case, it disregards the efforts of Johnson to defend his case–efforts which a jury found persuasive. By ignoring evidence supporting a defense and focusing exclusively on the evidence supporting a claim, the majority creates a burden which no defendant in an open-accounts suit can hurdle.

¶25. Natchez Electric, the plaintiff in this case, put on three witnesses: Natchez Electric manager Stacy Taggert, Natchez Electric controller Kally Dennig, and Jim Rayborn, a former regular customer of Natchez Electric. Johnson's defense witnesses included Chris Fortenberry, a former employee of Natchez Electric; Johnson himself; and Johnnie Fairchild, a former employee of Natchez Electric who worked at Robinson Electric Supply. The testimony of these witnesses can be loosely grouped into several relevant categories which resulted in the verdict of the jury and which underscore why the majority's retroactive application of a JNOV is improper.

**I. The Billing System.**

¶26. There was multiple testimony that the billing system Natchez Electric used was sometimes flawed, including testimony from current employees as to this fact. Mr. Taggert noted repeatedly that the system was imperfect: "[w]e were using a new pricing service . . . we were working through the debugging period of that. There were problems that we should have caught that we didn't . . . ." Mr. Taggert further admitted that "[w]e have made mistakes." The following exchange took place on cross-examination:

11

Q. Have you ever had any problems with your billings through your computer system?
A. Yes, sir, occasionally we did.
Q. Did you have any problems with your billing through your computer system with Mr. Johnson?
A. Yes, we did.

Examining some of the invoices assessed to Mr. Johnson, Mr. Taggert demonstrated that sometimes the computer billing system could result in error:

Q. Would you . . . tell the jury what the right charge should have been [for the product]?
A. . . . The right charge should have been $25 per hundred, and it states in here per each.
Q. And it also says that Mr. Johnson was charged $250 for ten of those items, correct?
A. Correct.
Q. What should he have been charged?
A. $2.50, I believe.

There were several other instances in the trial transcript where Mr. Taggert detailed how Mr. Johnson had been erroneously overcharged. On cross-examination, Mr. Taggert admitted multiple times the invoices had errors. When asked "[a]nd there have been incorrect amounts charged to Mr. Johnson on certain things?" he replied "Yes."

¶27. The problems with overbilling eventually resulted in a credit of $19,025 being issued to Mr. Johnson. Indeed, Natchez Electric conceded the overbilling problem. Ms. Dennig, who handled the bookkeeping duties for the company, was asked: "Obviously, Natchez Electric had some billing problems and some invoicing problems and some computer problems dealing with Mr. Johnson's account because a $19,025 credit for over-billing was issued?" The bookkeeper answered simply "correct." At one point, a letter was introduced

12

into evidence that was written by Natchez Electric's bookkeeper and sent to Mr. Johnson's bookkeeper; it included the language "Sorry for the problems my mess-up is causing."

## II. Problems with Staff.

¶28. In addition to the multiple problems with the computer system and overbilling which Natchez Electric admitted, there was some evidence of a human problem. While it was denied by Natchez Electric, this version of events was based on Natchez Electric accusing Chris Fortenberry, a former employee, of stealing from the company and then overbilling Mr. Johnson to cover the theft. At trial, Mr. Fortenberry testified to the following:

Q. And what did Mr. Taggert tell you?
A. It was on a situation to where Wayne [Johnson] had gone and Mr. Taggert had -- I would say accused me of taking material and billing Wayne out for it.
Q. What did Mr. Taggert tell you about that yesterday?
A. He said all they were doing is looking to see about it, but it didn't really mean anything. I was just one of, like he said, one of three or four people they were looking at in the store at that time.
Q. Were you aware that Mr. Taggert told Wayne that someone was selling stuff out the back door at Natchez [Electric]?
A. Yes, sir.
. . .
Q. Are you aware that Mr. Taggert told Wayne [Johnson] that somebody was selling stuff out the back door, charging it to his account, and that was what was causing the problem with his account?
A. Yeah, Wayne [Johnson] told me that.
Q. And did Mr. Taggert acknowledge that to you last night?
A. Yeah, uh-huh.

Mr. Fortenberry denied that he stole from the company. Mr. Taggert explicitly denied this version of events, although he did admit to firing Mr. Fortenberry because of the money owed back to Mr. Johnson:

Q. And wasn't it about that same time that Mr. Fortenberry was dismissed from service with Natchez Electric?

13

A.   The day this credit [to Mr. Johnson for $19,025] was written, he was.

Q.   He was fired; is that correct?

A.   Correct, due to the credit.

### III.  Accuracy of the Invoices.

¶29.   Natchez Electric admitted at trial that some of the allegedly unpaid invoices for which the company sued Mr. Johnson were inaccurate.  After it was determined that Mr. Johnson was owed a $19,000 credit due to overbilling, the credit was applied to his account.  However, the credit was not necessarily applied to the faulty invoice itself.

¶30.   For example, Mr. Taggert testified that Mr. Johnson bought a number of bank plates; he should have been charged 25 cents, but was instead charged $2.50.  He was ultimately overcharged $247.50 for the items.  When the discrepancy was discovered, and credit issued, it was not applied to that invoice.  Instead, it was applied at Mr. Johnson's request to some of his older debt with Natchez Electric.

¶31.   Accordingly, the invoices upon which Natchez Electric based its suit were often flawed.  Mr. Taggert admitted this on cross-examination:

Q.   You give [Mr. Johnson credit] in one hand and take it back in the other.

A.   No, sir, he's already taken the credit.

Q.   It's not reflected on the invoices, is it?

A.   Not on these individual invoices, no.

Q.   It's not reflected in the amount that you sued for?

A.   No, it's not reflected in that amount.

. . .

Q.   You sued on these invoices?

A.   Yes, sir.

Q.    Not on some from ten years ago.  You sued on these invoices.  These invoices have errors in them; do they not?

A.   Yes, they do.

. . .

Q.   Well, you keep telling us that you reduced what [Mr. Johnson] owed by $19,000.  Show me on these invoices where you reduced the errors that

14

are in these invoices from what you sued him on. That's what I'm asking.

A. I can't show you on these invoices.

Q. Because it doesn't exist, does it?

A. Not on these invoices, no.

Q. Okay.

. . .

Q. One other thing. I think you'll agree with me that there are some invoices that are in there that are in error?

A. Yes.

Q. And those invoices are a part of this lawsuit?

A. Yes.

. . .

Q. And there have been incorrect amounts charged to Mr. Johnson on certain things?

A. Yes.

¶32. Natchez Electric repeatedly admitted at trial that the invoices which formed the basis of their suit were "in error" and that there were numerous problems with the billing system. While it was disputed whether there was a thief at Natchez Electric who stole materials and falsified tickets assessing the debt to Mr. Johnson, it is undisputed that Mr. Fortenberry was fired due to the $19,025 credit issued to Mr. Johnson.

¶33. The majority acknowledges that it has long been our law that the burden of proof is initially on the party seeking to establish the debt. *Neal v. Hooper*, 153 Miss. 884, 885-86, 122 So. 103 (1929). Yet, despite the ample proof contained in the record and recounted *supra*, it disregards the ability of a defendant to mount a defense. In the eyes of the jury, Natchez Electric failed to establish that Johnson owed a debt. This is a conclusion that reasonable jurors could have reached in light of the evidence presented; the jury's findings were certainly underscored by the fact that representatives of Natchez Electric repeatedly

15

admitted the inability to establish a debt was owed at trial. Our standard of review forbids us from second-guessing juries in this fashion.

¶34. Even if Natchez Electric had established the correctness of the debt, there are multiple defenses one might assert in an open-account suit, primary among them non-delivery and lack of indebtedness. Mr. Johnson did not say that his defense was payment, or satisfaction, which would have shifted the burden to him. *See **Philley v. Toler***, 239 Miss. 347, 362, 123 So. 2d 233, 229 (1960) (in an open-account case, party has "the burden of proof to show payment under [a] plea of payment," because "[t]he burden of proving payment is upon him who asserts it"); *compare **Graham v. Pugh***, 417 So. 2d 536, 540-41 (Miss. 1982) ("A plea of the statute of limitations is an affirmative defense and  carrying the burden of proof lies on the party who relies upon that defense") (citing ***Philley***).

¶35. Instead, Mr. Johnson's defense was that the invoices were inaccurate. That is, the invoices were so flawed, overbilling so commonplace, theft and fraud were present in the company, all of which supported his theory that the debt did not exist. He then put on proof to support his defense of inaccuracy or lack of debt. That Natchez Electric had already credited Mr. Johnson $19,025 due to billing errors certainly carried weight with the jury. The majority wholly ignores that Johnson even mounted a defense; it focuses exclusively on the case asserted by Natchez Electric. The majority's substitution of its judgment for that of the jury is made complete when it notes that the accuracy of the invoices is of no matter, since "the record contains overwhelming evidence of the existence of an obligation for Johnson Electric to pay Natchez Electric for goods delivered . . . ." Whether the evidence was "overwhelming" or not is for a jury to determine; equally within the province of the jury

16

is whether the so-called "overwhelming" evidence was rebutted or surpassed by an adequate defense.

¶36.   In today's digital world, a defense of total inaccuracy may not be commonplace, but in light of the ample evidence above, and taking it in the light most favorable to Mr. Johnson, it is impossible to say that no reasonable juror could arrive at the verdict reached in the trial below.  I am concerned about the repercussions from the automatic assumption that a debt is valid.  Because the majority fails to observe the standard of review, and because reasonable jurors could have decided this case in favor of Mr. Johnson, I must respectfully dissent.

**GRAVES AND RANDOLPH, JJ., JOIN THIS OPINION.**