*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 09b0006n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: BARNHILL'S BUFFET, INC., )<br><br>)<br><br>)<br><br>Debtor. )<br>_____ )<br><br>)<br>SCS GENERAL CONTRACTORS, INC., )<br><br>)<br>Plaintiff-Appellant, )<br><br>)<br>v. )<br><br>)<br>WELLS FARGO BANK, N.A. )<br><br>)<br>and )<br><br>)<br>DYNAMIC MANAGEMENT CO., LLC, )<br><br>)<br>Defendants-Appellees. )<br>_____ ) | Nos. 08-8096<br>and 08-8097 |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee.
No. 07-08948; Adv. No. 08-0021.

Argued: May 20, 2009

Decided and Filed: August 5, 2009

Before: BOSWELL, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

1

---

**COUNSEL**

**ARGUED:** James R. Mozingo, KNIGHT MOZINGO & QUARLES, PLLC, Jackson, Mississippi, for Appellant. James R. Kelley, NEAL & HARWELL, PLC, Nashville, Tennessee, Courtney H. Gilmer, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Nashville, Tennessee, for Appellees. **ON BRIEF:** James R. Mozingo, William M. Simpson II, KNIGHT MOZINGO & QUARLES, PLLC, Jackson, Mississippi, for Appellant. James R. Kelley, Marc T. McNamee, Leon H. Wolf, NEAL & HARWELL, PLC, Nashville, Tennessee, Courtney H. Gilmer, Randal S. Mashburn, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Nashville, Tennessee, for Appellees.

---

**OPINION**

---

G. HARVEY BOSWELL, Bankruptcy Appellate Panel Judge. In this case, Wells Fargo Bank, N.A. ("Wells Fargo") and Dynamic Management Company, LLC ("Dynamic") filed motions for summary judgment seeking dismissal of the claims of SCS General Contractors, Inc. ("SCS") against them. SCS sought a continuance or denial of the motions to allow it additional time for discovery pursuant to Federal Rule of Civil Procedure 56(f). The bankruptcy court denied SCS's motions and granted the motions for summary judgment. It is from these orders that SCS appeals. For the following reasons, we affirm the orders of the bankruptcy court.

## I. ISSUES ON APPEAL

The issues raised by this appeal are whether the bankruptcy court abused its discretion in denying SCS's motions for additional time for discovery pursuant to Federal Rule of Civil Procedure 56(f), and whether it erred in granting summary judgment in favor of Wells Fargo and Dynamic.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel (the "Panel") has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order granting summary judgment is final. *Buckeye Retirement Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 649 (B.A.P. 6th Cir. 2008).

The orders granting summary judgment are reviewed de novo. *Schultz v. U.S.*, 529 F.3d 343, 349 (6th Cir. 2008). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Dev., LLC (In re Brice Rd. Dev., LLC)*, 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008) (citation and internal quotation marks omitted).

The bankruptcy court's order denying SCS additional time for discovery pursuant to Federal Rule of Civil Procedure 56(f) is reviewed for an abuse of discretion. *Plott v. Gen. Motors Corp., Packard Elec. Div.,* 71 F.3d 1190, 1196 (6th Cir. 1995). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL (In re Murray, Inc.),* 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citation omitted). The bankruptcy court's decision, under this standard, will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (quoting *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)). *See also Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below]

committed a clear error of judgment.'") "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re Wingerter,* 394 B.R. 859, 862 (B.A.P. 6th Cir. 2008) (citation omitted).

## III.   FACTS

In 2004, Dynamic and Jefferies Capital Partners began exploring acquisition of a privately held restaurant company that owns and operates buffet restaurants. At some point prior to December 2004, Dynamic signed a letter of intent with Barnhill's Buffet, Inc. ("Debtor") concerning acquisition of the Debtor. In February 2005, Dynamic Acquisitions Group, LLC acquired 100% of the equity ownership of the Debtor through the merger of DB Acquisitions, LLC ("DB") into and with the Debtor. Craig Barber was the President of Dynamic, Dynamic Acquisitions Group, LLC, DB, and the Debtor. Financing for the transaction was provided by Wells Fargo. Following completion of the transaction, DB ceased to exist with the Debtor as its successor by merger.

On December 3, 2007, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. At that time, the Debtor operated twenty-nine buffet style restaurants, three of which were located in Mississippi and were leased from Levine Investments, Limited Partnership ("Levine"), Sowashee Venture, LLC ("Sowashee"), and Spirit Finance Acquisitions, LLC ("Spirit") (collectively "Landlords"). Each written lease contained general maintenance and repair clauses, but did not require the Debtor to provide any specific repairs or to perform any particular construction.[1]

Wells Fargo was the Debtor's primary creditor holding a claim of $23,256,526 secured by substantially all of the Debtor's assets with the exception of the leasehold interests of the Debtor's restaurants. Wells Fargo also provided post-petition financing to the Debtor. On December 21, 2007, the bankruptcy court entered a Final DIP Financing Order granting Wells Fargo a first priority,

---

[1] Levine has not made an appearance and SCS has not obtained a copy of the lease between Levine and the Debtor.

4

perfected security interest in substantially all of the Debtor's assets, including the leaseholds which it had not previously held as security, in order to secure the DIP obligations.

In 2005, the Debtor's restaurants in Gulfport and Meridian, Mississippi, were damaged by Hurricane Katrina and rendered unusable. The Debtor contracted with SCS to make the necessary repairs. While the Landlords were aware of the damage to the restaurants and the subsequent repairs being made by SCS, they did not sign any contracts with SCS for the repairs. According to SCS, the total cost to repair the Gulfport restaurant was $263,158.60. An unpaid balance of $58,181.14 remains outstanding. The total cost to repair the Meridian restaurant was $86,967.00. An unpaid balance of $40,217.00 remains outstanding.

Subsequent to the repair work on the Gulfport and Meridian restaurants, the Debtor retained SCS to remodel, expand, and improve its restaurant in Jackson, Mississippi. The Jackson restaurant was leased from Levine. The total cost of the repairs was $476,809.35.[2] An outstanding balance of $148,140.45 remains. The landlord, Levine, was also aware of SCS's work on the Jackson property, but did not sign a contract with SCS for its work.

The Debtor did not grant SCS a security interest in its leaseholds on the three Mississippi properties, nor did SCS seek or obtain a statutory mechanic's or materialmen's lien in any of the leaseholds. After its informal attempts to obtain payment failed, SCS filed suit in the First Judicial District of Hinds County, Mississippi, seeking monetary damages and prejudgment interest on an open account, but not the imposition of an equitable lien. Its suit was subsequently removed to federal court and thereafter automatically stayed by the filing of the Debtor's petition for relief on December 3, 2007.

---

**2** The record before us contains a one page document entitled "Contract Agreement" on the letterhead of SCS. This "Contract Agreement" is dated December 16, 2005 and is between "SCS General Contractors, Inc. and Barnhills Buffet (Owner)." Pursuant to the Contract Agreement, SCS agreed to provide labor and materials for two building additions for the sum of $223,000. A payment schedule is also provided for in the Contract Agreement. There is no provision for remedies in the event of the failure of a party to the Contract Agreement to perform. No other written contracts concerning the work performed by SCS are part of the record before us and it is unclear from the record whether any exist.

5

After filing its petition for relief, the Debtor sought to sell the restaurants as operating entities. On January 28 and February 29, 2008, the bankruptcy court entered orders approving the sale of the restaurants, including assignment of the leaseholds. SCS objected to the sale of the restaurants and to the assumption and assignment of the leaseholds asserting that it held liens in the leaseholds. In order to allow the sales to proceed, the bankruptcy court ordered that $246,538.59 of the sale proceeds be placed in an escrow account pending final adjudication of the claims asserted by SCS. Following the sales, the parties reached a settlement agreement which resolved most issues left in the case, and the case was converted to chapter 7.

On January 16, 2008, the Debtor filed a Complaint for Declaratory Judgment and Injunctive Relief against SCS, the Landlords, Wells Fargo, and Dynamic. The Debtor filed an amended complaint on February 8, 2008. On March 11, 2008, SCS filed its answer to the Debtor's first-amended complaint, counterclaim against the Debtor, and cross-claims against the Landlords and Dynamic. In its counterclaim and cross-claims, SCS asserted that it was entitled to have equitable liens impressed against the leasehold interests of the Debtor and equitable liens impressed against the fee interests of the Landlords. In addition, SCS sought monetary relief from the Debtor and asserted that Dynamic was the alter ego of the Debtor and should, therefore, be held jointly and severally liable with the Debtor on the claims of SCS. Through the affidavit of its project manager, SCS asserted that it communicated with both the Debtor and Dynamic regarding the work to be done and payment for the work, and that based upon their interactions there was no reason to differentiate between the Debtor and Dynamic.

On August 18, 2008, a pretrial conference was held at which the parties agreed to expedited discovery and deadlines. The bankruptcy court entered the pretrial order on August 25, 2008, setting an October 3, 2008, deadline for filing motions for summary judgment, an October 17, 2008, deadline for filing responses to such motions, and a hearing date of November 4, 2008.

On October 2, 2008, SCS filed a motion for an expedited order to amend the pretrial order and to extend the deadline for filing motions for summary judgment and the hearing date, asserting

6

that it had been unable to obtain discovery from all parties. SCS asserted that it had received some documents from Wells Fargo, but was awaiting others and did not know whether additional requests would be made. The motion also acknowledged receipt of requested discovery from Dynamic, but noted that additional discovery, including depositions, might be necessary. Both Wells Fargo and Dynamic objected.

Wells Fargo and Dynamic filed motions for summary judgment on October 3, 2008. On October 17, 2008, the bankruptcy court denied SCS's motion to amend the pretrial order, but granted SCS one additional week to respond to the motions for summary judgment. Seeking additional time for discovery, on October 24, 2008, SCS filed motions to deny the motions for summary judgment or continue the hearing pursuant to Federal Rule of Civil Procedure 56(f). It also filed a substantive response to Wells Fargo's motion for summary judgment; however, SCS did not file a substantive opposition to Dynamic's motion. In regard to Dynamic, the Rule 56(f) motion and attached affidavit of counsel for SCS asserted that it had been unable to depose key witnesses in connection with Dynamic's "fact intensive" motion for summary judgment, and, *inter alia*, that it had not had sufficient time to review voluminous relevant documents in the possession of the trustee. In regard to Wells Fargo, the Rule 56(f) motion and attached affidavit referenced SCS's "inability to obtain discovery in spite of [SCS's] best efforts."

On November 4, 2008, the bankruptcy court held a hearing on Wells Fargo's and Dynamic's motions for summary judgment. The court issued a Memorandum Opinion on November 19, 2008, denying SCS's motions seeking to deny summary judgment or continue the hearing pursuant to Fed. R. Civ. Proc. 56(f) and granting both motions for summary judgment. Final orders granting Wells Fargo's and Dynamic's motions for summary judgment were entered on November 24 and 26, 2008, respectively.

This timely appeal followed.[3]

---

[3] Separate appeals of these orders have been consolidated.

## IV.    DISCUSSION

A.  Wells Fargo's Motion for Summary Judgment

SCS moved to deny or continue Wells Fargo's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f)[4] asserting that, in spite of its best efforts, SCS had been unable to obtain adequate discovery.  While discovery is not required before a court grants a motion for summary judgment, such a grant "is improper if the non-movant is not afforded a sufficient opportunity for discovery."  *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994)).  Therefore, Rule 56(f) provides that the court may defer summary judgment pending discovery if the non-moving party submits affidavits stating that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. Proc. 56(f); *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995).  The bankruptcy court denied SCS's motion.

The Sixth Circuit Court of Appeals has identified a number of different factors which are applicable when a party seeks additional time for discovery under Rule 56(f) including:  (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the discovery would have changed the ruling below; (3) how long the discovery period lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests. *Plott,* 71 F.3d at 1196-97.  Applying these factors, the bankruptcy court did not abuse its discretion in denying SCS's motion.  SCS did not propound any discovery until nine months after the adversary proceeding was initiated. *See McGraw v. Betz (In re Bell & Beckwith)*, 112 B.R. 863, 868 (Bankr. N.D. Ohio 1990) ("A request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery.").  Additionally, SCS's affidavit failed to demonstrate how the information it sought was material to Wells Fargo's motion for summary judgment or how it would change the outcome of the

---

[4] Federal Rule of Civil Procedure 56(f) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056.

8

ruling below. Finally, while the affidavit details that SCS has been unable to obtain the Jackson property lease, and implies that it is because the Jackson property landlord did not make an appearance in the adversary proceeding, it does not explain what effect discovery of the lease will have nor why it did not seek discovery of that lease from the Debtor who initiated the adversary proceeding. Because SCS had a total of ten months to seek discovery, but was dilatory in its efforts, and failed to show how the information it sought would affect the outcome of Wells Fargo's summary judgment motion, the bankruptcy court did not abuse its discretion in denying the Rule 56(f) motion.

Having determined that the bankruptcy court did not err in denying the Rule 56(f) motion, we turn to the substance of Wells Fargo's motion for summary judgment. The only issue between Wells Fargo and SCS is whether SCS has prepetition liens against the Debtor's leasehold interests or the Landlords' fee interests which would trump Wells Fargo's interest in the funds being held in escrow. Like most states, the Mississippi legislature has adopted a statutory scheme to provide those who perform construction and repair services with liens against property on which they work. *See* Miss. Code Ann. § 85-7-131 *et seq.* ("Mechanic's Lien Laws").[5] Mississippi Code Annotated § 85-7-131 provides generally that those performing construction and repair services shall have a lien on the property on which the structure is located.[6] Such a lien is limited, however, by Miss. Code Ann. § 85-7-135 which provides that the lien shall only arise when the work is contracted for by the owner

---

[5] Because the properties at issue here are located in Mississippi, the parties agreed that Mississippi law applies.

[6] Miss. Code Ann. § 85-7-131 provides in relevant part:
Every house, building, water well or structure of any kind . . . erected, constructed, altered or repaired . . . shall be liable for the debt contracted and owing, for labor done or materials furnished, or architectural engineers' and surveyors' or contractors' service rendered about the erection, construction, alteration or repairs thereof; and debt for such services or construction shall be a lien thereon. The architects, engineers, surveyors, laborers, and materialmen and/or contractors who rendered services and constructed the improvements shall have a lien therefor. . . . If such house, building, structure, or fixture be in a city, town or village, the lien shall extend to and cover the entire lot of land on which it stands and the entire curtilage thereto belonging. . . . Such lien shall take effect as to purchasers or encumbrancers for a valuable consideration without notice thereof, only from the time of commencing suit to enforce the lien, or from the time of filing the contract under which the lien arose, or notice thereof, in the office of the clerk of the chancery court. . . .

or by a person authorized, either expressly or impliedly, by the owner.[7] The statutory mechanic's lien is further limited by § 85-7-137 which requires that the owner of property give written consent for the services performed in order for the lien to extend to the fee interest.[8] Despite this statutorily provided remedy, SCS has never asserted it was entitled to a statutory mechanic's or materialman's lien nor has it ever attempted to obtain such a lien. Rather, because it provided construction and repair services from which the Debtor and Landlords have benefitted, SCS asserts that it is entitled to an equitable lien against both the fee interests of the Landlords in the three properties at issue, and the leasehold interests of the Debtor.[9]

Mississippi courts recognize the existence of equitable liens in limited circumstances. *See Pincus v. Collins*, 22 So. 2d 361 (Miss. 1945) (holding that explicit contractual language which granted the contractor a lien was sufficient to create an equitable lien); *Lindsey v. Lindsey*, 612 So. 2d 376 (Miss. 1992) (holding that a court may impress an equitable lien to prevent unjust enrichment). Nevertheless, despite acknowledging the existence of equitable liens, the Mississippi Supreme Court has held that generally, the rights of materialmen to assert a lien are governed by statute. *Riley Bldg. Supplies, Inc. v. First Citizens Nat'l Bank*, 510 So. 2d 506, 508 (Miss. 1987). The Mississippi Supreme Court stated:

> There is no natural law of materialman's liens. The law governing the subject is the product of enactments of the Mississippi Legislature. *See Miss. Code Ann. § 85-7-131 (Supp. 1986).* Parties such as [the materialman] hold a lien against property only to the extent that they have brought themselves within the terms of the statute.

---

[7] Miss. Code Ann. § 85-7-135 provides:
The lien declared in section 85-7-131 shall exist only in favor of the person employed, or with whom the contract is made to perform such labor or furnish such materials or render such architectural service, and his assigns, and when the contract or employment is made by the owner, or by his agent, representative, guardian or tenant authorized, either expressly or impliedly, by the owner.

[8] Miss. Code Ann. § 85-7-137 provides:
If such house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture, and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner.

[9] The parties agreed that the escrowed funds represented either the leasehold interests or the Landlords' fee interests. In other words, if the bankruptcy court found that SCS had an equitable lien in either interest, its lien would be satisfied by the escrowed funds. Therefore, when the bankruptcy court found that SCS had no equitable lien in either interest, the claims of SCS against all parties, including the Landlords, were dismissed.

*Id.; accord Chic Creations of Bonita Lakes Mall v. Doleac Elec. Co., Inc.*, 791 So. 2d 254, 259 (Miss. Ct. App. 2000) (finding no basis for creation of an equitable lien and noting, "the chancellor cannot by labeling it an equitable lien, provide subcontractors a lien to which they are not statutorily entitled;" in the absence of a statute, "materialman and laborers would be mere general creditors of the contractor"); *Countrywide Home Loans, Inc. v. Parker*, 975 So. 2d 233 (Miss. 2008) (denying mortgagee an equitable lien where the requirements for a statutory lien were not met). "Mechanics' and materialmen's liens are not recognized at common law or in equity. They are creatures of and dependent upon statute." *Jones Supply Co. v. Ishee*, 163 So. 2d 470, 472 (Miss. 1964).

This Panel holds that under Mississippi law, when a materialman or mechanic, such as SCS, fails to take steps available to perfect a lien, his claims are subordinate to those who take for valuable consideration without notice. *Riley,* 510 So. 2d at 509. The Mississippi Supreme Court has explained that "[t]he lien statutes of Mississippi afford an abundance of protection for mechanics and materialmen. But in all cases such persons must take action as a condition precedent to receiving the benefits thereof, and upon their failure so to do their remedies are those of common creditors." *Jones Supply Co.*, 163 So. 2d at 475.

There are no facts in the record to support SCS's claim that it has enforceable liens against either the Debtor's leasehold interests or against the Landlords' fee interests. As noted above, an equitable lien may arise by explicit contractual language granting a lien, *Pincus v. Collins*, 22 So. 2d 361 (Miss. 1945), or an equitable lien may be impressed by a court of equity to prevent unjust enrichment by the party against whom the lien is asserted. *Lindsey v. Lindsey*, 612 So. 2d 376 (Miss. 1992).

This Panel will first discuss the insufficiency of SCS's claim that it has equitable liens against the Debtor's leasehold interests. Without question, the liens did not arise by virtue of explicit contractual language granting SCS liens in the leasehold interests. The only written agreement between SCS and the Debtor did not contain *any* language regarding what would happen in the event of a default, much less language granting SCS a lien. Furthermore, to the extent that SCS alleges

11

that the Debtor was unjustly enriched by SCS's work, SCS's argument fails under both Mississippi law and bankruptcy law.

Under Mississippi law, the right to enforce an equitable lien arises by operation of law at the time of an alleged wrong or unjust enrichment. *First Nat'l Bank of Jackson v. Huff*, 441 So. 2d 1317 (Miss. 1983). Thus, to the extent that SCS had equitable liens against the Debtor's leasehold interests on an unjust enrichment theory, the liens arose and could be enforced against the Debtor's interests at the time SCS was not paid for the work it performed on the properties. Once the Debtor filed for bankruptcy, the Bankruptcy Code governed creditors' rights. 11 U.S.C. § 544 provides that upon the filing of a bankruptcy petition, the trustee (and by extension, the debtor in possession under 11 U.S.C. § 1107) acquires the status of a bona fide purchaser for value.[10] *Rogan v. Bank One* (*In re Cook*), 457 F.3d 561, 566 (6th Cir. 2006); *Hill v. Akamai Tech., Inc.* (*In re MS55, Inc.*), 477 F.3d 1131, 1134-35 (10th Cir. 2007). As a bona fide purchaser, the trustee or debtor in possession may avoid liens not perfected or enforced prior to the filing of the bankruptcy.

By operation of § 544 and § 1107 of the Bankruptcy Code, the debtor in possession stands in the shoes of a hypothetical bona fide purchaser at the time of the commencement of the case, and may avoid any liens which could by avoided by a subsequent bona fide purchaser for value under Mississippi law. Mississippi law provides that an equitable lien cannot be enforced against property that has been transferred to a bona fide purchaser without notice. *First Nat'l Bank of Jackson v. Huff*, 441 So. 2d at 1321; *Collier v. Shell Oil Co.*, 534 So. 2d 1015, 1018 (Miss. 1988) ("every

---

[10] 11 U.S.C. § 544 states in part:
(a) The trustee shall have . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -
. . . .
(3) a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 1107 provides in pertinent part:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

reasonable intendment should be made to support the titles of bona fide purchasers of real property. . . .”). SCS may have been entitled to have equitable liens enforced against the Debtor's leasehold interests, but SCS did not perfect or enforce the liens at any time prior to the filing of bankruptcy. To the extent that SCS held unperfected and unenforced equitable liens against the Debtor's interests, SCS's interests were cut off by the filing of the bankruptcy petition. Since SCS has neither a contractual lien or an unjust enrichment claim which was perfected or reduced to judgment, its argument that it has equitable liens against Debtor's leasehold interests, which elevate its claim over the interests of the Debtor and the perfected security interest of Wells Fargo, fails.

SCS also argued that it had equitable liens against the fee interests held by the Landlords. Mississippi law requires that a landowner give written consent for work to be performed before an equitable lien will be enforced against a fee interest. Miss. Code Ann. § 85-7-137; *Brown v. Gravlee Lumber Co.*, 341 So. 2d 907 (Miss. 1977). In order for the Landlords' leases to constitute adequate written consent, the leases must identify the *specific* construction or repairs to be performed. *Graham v. Pugh*, 417 So. 2d 536, 540 (Miss. 1982) (finding written consent of owner where the "lease specifically and in writing provided that the lessee was to see that the work was done on that particular building"); *Brown*, 341 So. 2d at 910 (holding written consent for certain repairs required to impose equitable lien on entire lot); *Burwell v. Planters Lumber Co.*, 70 So. 2d 71 (Miss. 1954) (permitting lien on entire lot where lease detailed certain repairs and construction). Because the leases at issue here do not speak to any specific construction or repairs, but rather contain only standard maintenance and repair language, they do not constitute the necessary written consent of the Landlords for the work of SCS sufficient to impress an equitable lien on the fee interests.

SCS also argues that the Sixth Circuit recognizes the concept of an equitable lien. In *XL/Datacomp, Inc. v. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443, 1451 (6th Cir. 1994), the Sixth Circuit reversed the bankruptcy court's imposition of a constructive trust and held that, because a constructive trust is a remedy that does not come into existence until it is judicially declared, a creditor's claim of entitlement to a constructive trust cannot be enforced in bankruptcy unless the party seeking the trust can show that another court has already imposed such a trust on the assets.

13

*Id.* at 1449. Consequently, as a general rule, a bankruptcy court may not impose a constructive trust. *Id.* at 1453. The Sixth Circuit later clarified its decision in *Omegas Group* by providing that a bankruptcy court may impose a constructive trust if "property in bankruptcy was not subject to distribution to creditors and so did not implicate the rationale of ratable distribution." *Poss v. Morris* (*In re Morris*), 260 F.3d 654, 666 (6th Cir. 2001) (citing *McCafferty v. McCafferty* (*In re McCafferty*), 96 F.3d 192, 196-97 (6th Cir. 1996)). Additionally, *Omegas Group* does not preclude a bankruptcy court from enforcing a constructive trust if creditors initiated appropriate state court proceedings prior to the filing of bankruptcy. *In re Morris*, 260 F.3d 654; *Kitchen v. Boyd* (*In re Newpower*), 233 F.3d 922, 936 (6th Cir. 2000). In short, *Omegas Group* bars a bankruptcy court from impressing a constructive trust in those situations, like SCS's, where a "creditor with a claim arising in the ordinary course appeals to the bankruptcy court for preferential treatment." *In re Morris*, 260 F.3d at 666 (citing *In re Newpower*, 233 F.3d 922, 936 (6th Cir. 2000)).

The Sixth Circuit's decision in *Omegas Group* is of no assistance to SCS for two reasons. The issue in *Omegas Group* involved the imposition of a constructive trust for the purpose of removing the trust property from the property of the estate pursuant to 11 U.S.C. § 541(d). To the extent the creditor could assert a trust, those assets subject to the trust would not be available to other creditors. SCS has not argued on appeal that the proceeds in escrow are not property of the estate, or that there was some prepetition asset which could have been impressed with a constructive trust. Second, even if SCS had some equitable claim to funds prepetition, the *Omegas Group* decision makes it quite clear that SCS's claim would have had to have been reduced to judgment prior to the filing of the bankruptcy.

SCS fails to establish that it has an equitable or statutory lien against either the Debtor's leasehold interests or the Landlords' fee interests. In the absence of a lien interest, SCS has no claim against the funds held in escrow. Wells Fargo was granted a lien by virtue of the DIP Financing Order. Wells Fargo's prepetition and postpetition liens give it a right to the funds in escrow. The bankruptcy court's order granting summary judgment to Wells Fargo is affirmed.

14

B. Dynamic's Motion for Summary Judgment

In its cross-claim against Dynamic, SCS asserted that Dynamic was the "alter ego" of the Debtor because, based upon their interactions, there was no reason to differentiate between the Debtor and Dynamic. SCS asserted, therefore, that Dynamic should be held jointly and severally liable with the Debtor. In order to prove an "alter ego" theory under Mississippi law and disregard the corporate entity, a party must demonstrate: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder. *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989).

Dynamic responded to the allegations of SCS with its motion for summary judgment asserting that SCS could not demonstrate all of the essential elements of an alter ego. In support of its motion, Dynamic presented the affidavit of one of its members, W. Craig Barber ("Barber"), attesting that Dynamic did not have any employees, did not manage, own, operate or control the Debtor or any of its restaurants, did not have any involvement or authority with the Debtor's accounts payable, maintained a separate accounting system from the Debtor, and never had a contractual relationship with SCS. In addition, Dynamic provided copies of twenty-nine invoices from SCS submitted to the Debtor and checks paying those invoices drawn on an account of the Debtor.

SCS did not file a substantive response to Dynamic's motion for summary judgment. Instead, SCS filed a motion to deny or continue Dynamic's motion pursuant to Rule 56(f) seeking additional time for discovery. In support of its Rule 56(f) motion, SCS submitted an affidavit of its counsel asserting that it had not had an opportunity to depose Barber and was in the process of reviewing approximately 400 boxes of documents in the possession of the chapter 7 trustee, some of which, including various emails, belied some of Barber's assertions. In particular, SCS sought additional time to discover information relevant to Dynamic's role in the acquisition of the Debtor,

15

as well as information about allegedly shared email addresses, websites, and facilities between Dynamic and the Debtor.

The bankruptcy court denied SCS's Rule 56(f) motion without discussion. It then went on to consider the affidavit of Barber and the procedural response of SCS. Finding that the affidavit of SCS did not rebut Barber's statements and contained merely "conclusory allegations, speculation, and unsubstantiated assertions" which are insufficient to defeat summary judgment, the bankruptcy court granted Dynamic's motion pursuant to Federal Rule of Civil Procedure 56(e).[11]

As with SCS's Rule 56(f) motion filed in regard to Wells Fargo's motion for summary judgment, this Panel applies the factors set forth by the Sixth Circuit in *Plott*: (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the discovery would have changed the ruling below; (3) how long the discovery period lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests. *Plott,* 71 F.3d at 1196-97. The adversary proceeding was filed in January 2008, and between that time and August 2008, when the parties entered an agreed upon pretrial order, SCS issued no discovery requests. SCS did not propound discovery to Dynamic until September 12, 2008, to which Dynamic timely responded. Additionally, while the bankruptcy court denied SCS's motion to amend the pretrial order, it granted SCS an additional 10 days to respond to Dynamic's motion for summary judgment. SCS then once again requested additional discovery time through its Rule 56(f) motion. While SCS asserts that it did not have an opportunity to depose Barber, it never requested to depose him, not even with the additional 10 days the bankruptcy court granted it.

Additionally, while SCS presented an affidavit that conformed with Rule 56(f) in that it detailed the discovery it sought to conduct and what it sought to show, it failed to demonstrate how the information it seeks is material or would change the ruling below and why it did not previously

---

[11] Federal Rule of Civil Procedure Rule 56(e) provides in pertinent part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading . . . . If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

16

seek to depose Barber. *See PNC Bank v. M.T. Person, III*, 2007 WL 2874459, at *3 (W.D. Ky. 2007) (finding defendant failed to meet burden of demonstrating need for additional discovery time because affidavit did not detail how information sought was material to resolution or why it did not previously seek information). Before alter ego liability could be placed upon Dynamic, SCS had to show fraud or other equivalent misfeasance on the part of the Debtor or the Debtor's shareholders. While SCS had nine months to take discovery, in its affidavit, SCS failed to assert such corporate fraud or misfeasance by the Debtor. Based on the statements made in SCS's affidavit, there is no indication that additional time for discovery would have changed the bankruptcy court's ruling. *Plott*, 71 F.3d at 1196-97. Since SCS's affidavit did not allege facts sufficient to state a cause of action against Dynamic on an alter ego theory, the bankruptcy court did not abuse its discretion in denying SCS's motion for additional discovery and refusing to defer summary judgment under Rule 56(f). Consequently, because SCS presented no substantive opposition to Dynamic's properly supported motion for summary judgment, the bankruptcy court did not err in granting Dynamic's motion for summary judgment. *See* Fed. R. Civ. Proc. 56(e).

## V. CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court denying SCS's Rule 56(f) motions and granting Wells Fargo's and Dynamic's motions for summary judgment are affirmed.